Ex Parte John Beloise.

No. 14918. Delivered October 28, 1931.

The opinion states the case.

*Earl Adams, Jr.,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Relator was charged by indictment with the murder of W. L. Edwards. Through habeas corpus proceedings in the criminal district court of Harris county he sought bail. From an order of that court remanding him without bail this appeal is taken.

The state relied almost exclusively in making out a case against relator upon the testimony of one Tom Maddi, who gave evidence as to admissions made to him by relator. It appears from testimony other than that of Maddi that relator had sought an introduction to Edwards, apparently for the purpose of enlisting the services of Edwards in disposing of intoxicating liquor for relator. Maddi's testimony is fragmentary and leaves much to inference. From it, however, the conclusion may be reached that Edwards was in possession of certain letters or papers which other parties desired; that arrangements had been made with relator, Peretta and Adamo to pay them $5,000 to secure these documents from Edwards. Maddi says relator had told him "they" or "we" had bought a shotgun, from which it might be inferred that it was contemplated that an effort to secure these papers from Edwards might result in his death. During these statements claimed to have been made by relator to Maddi relator stated that he liked Edwards, was sorry for him and did not want to see him killed; also at one time relator told Maddi the whole matter was "off." On the Sunday night that Edwards was killed Maddi says relator telephoned him about ten-thirty and informed him that something "serious had happened" but declined to tell him over the telephone what it was; that at relator's request Maddi went to the house which had been occupied by relator and loaned relator some pliers and a screw driver to change the license plates on his car; that relator declined to tell him at the time why he was making the change; that witness discovered blood in relator's car and asked what had happened and that relator said "that crazy Sam, (referring to Sam Peretta) had bumped the man off," (referring to Edwards). He also told witness that Sam had got in his car and made him drive it about until Edwards' body could be disposed of. The inference may be drawn either that Edwards was killed while in relator's car, or that his body had been placed in the car after the killing. If relator told Maddi anything about the circumstances of the killing, where it occurred, or any of the details, it is not disclosed in Maddi's testimony. Relator did tell him that he did not know

Edwards was to be killed at the time he was slain. He insisted on Maddi not remaining, as Peretta and Adamo were to come and bring gasoline and they were to take the car out and burn it. The car was found the next morning on a road near Houston, where it had been destroyed by fire; it was identified by the number plates which had been placed on the car the night before. Up to this point it is questionable whether Maddi's testimony brings him in such relation to the transaction as to characterize him as an accomplice witness; however, he further says that on the following Monday morning relator told witness he had not received any part of the money as "they could not get it until the bank opened"; either that evening or the next morning, Maddi saw relator with twenty or twenty-one $100 bills, which he, presumably, had received from Peretta and Adamo; he gave $1,400 of this money to Maddi who was to take care of it for relator. Having received a part of the fruits of the crime into his possession for the benefit of relator, brings Maddi in such relation to the crime as to characterize him as an accomplice witness.

Relator presents two propositions upon which he relies for a reversal of the order of the court remanding him without bail; first, that, assuming Maddi not to have been an accomplice, his recital of the admissions of relator to him was so fragmentary and unsatisfactory as to fall short of making out that character of case contemplated by the law as nonbailable; second, that Maddi's testimony having characterized him as an accomplice witness, even conceding that it made out a complete case against relator, was not corroborated in such a way as to render the offense non-bailable.

In section 224, Branch's Ann. Tex. P. C., the author very clearly states the rule to be:

"The rule is 'all prisoners shall be bailable.' The exception is 'when the proof is evident' that not only the accused is guilty, but that the jury will, if they properly enforce the law, probably assess capital punishment, this conclusion to be reached by the well-guarded and dispassionate judgment of the court or judge passing upon the question."

This rule was deduced from the opinions of this court construing section 11, article 1, Bill of Rights, Constitution of Texas, which provides that:

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident; * * *"

See authorities collated under said section 224. Maddi's testimony as to the admissions of relator throws no light upon the place or manner of the killing, or relator's part therein, leaving it gravely doubtful whether bail should have been refused upon the general phase of the case; but there can be no question under the record before us as to the soundness of relator's second proposition that the evidence corroborating Maddi's is so incomplete that bail should not have been denied under the

authority of Ex parte Locklin, 72 S. W., 585. In that case it was controverted whether the corroborating evidence tended to connect accused with the crime, and that being a controverted question the court held the proof not to be "evident" in contemplation of the language in the bill of rights. If the testimony of Maddi made out a complete case against relator, he being an accomplice witness, the law steps in and prevents a conviction (article 718, C. C. P.) unless his testimony be corroborated by other evidence tending to connect relator with the offense charged. In other words, proof of the crime and relator's guilt thereof would not be "evident" in contemplation of relator's right to bail unless the corroboration of the accomplice witness measured up to the requirements of the statute. We are constrained to hold that it does not do so under the record before us.

The judgment of the trial court denying bail is reversed and bail is granted in the sum of $10,000.

*Judgment reversed and bail granted.*